MIGUEL A. COLÓN RIVERA, ETC., Plaintiffs and Appellants, *v.* COMMONWEALTH OF PUERTO RICO ET AL., Defendants and Appellees.

No. R-70-253.        Decided March 15, 1971.

*Goldman, Antonetti & Subirá* and *David F. Barreto* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Bienvenido Vélez Coello, Assistant Solicitor General,* for the Commonwealth.

PER CURIAM: ▮ The minor, Marta Magdalena Colón Yera and her parents, claim from the Commonwealth damages sustained as a result of an accident said minor suffered in the water closets of the school she attended. Young Marta finished her classes at 11:00 a.m. She started again at 12 o'clock. After eating her lunch on the school grounds, she went to the second floor to go to the water closets. She entered therein and occupied one of the cubicles. Immediately after she entered, an 11-year-old boy entered the girls' water closets and attempted to enter the cubicles where other girls were. He did not accomplish his purpose because the doors were fastened with door bolts. Then he tried to enter the cubicle where plaintiff was. The boy pulled outwards, the girl pulled inwards. In the struggle her left-hand index finger was trapped by the door and she lost "part of the distal phalanx of the finger." The judge who took cognizance of the case dismissed the complaint. His action was correct. The injured girl, a 10-year-old girl, suffered the accident in a restricted area where children of the opposite sex are not supposed to enter, it not having been established that the teachers or janitors had knowledge that similar acts had previously occurred. It was not established that the boys used to enter the girls' water closets. It was not reasonable to anticipate the

presence of a boy trying to enter an occupied cubicle in the girls' water closets. From the point of view of the law, the event was not foreseeable.

■ But even assuming that the absence of the door bolt in the door of the cubicle were a controlling factor of the liability of the Commonwealth, the judge did not make any conclusion whatsoever with respect to the time that the door bolt had been defective, and the transcript of evidence was not sent to this Court to place the latter in a condition to make its own findings. If the door bolt had been broken on the same day the accident occurred, what liability could be imposed on defendant? It is true that the State must be alert in providing the proper vigilance in the educational institutions and in taking all the necessary measures to watch over the welfare and security of thousands of students who attend the public schools, but truly, it is not fair or reasonable to hold it liable for every possible injury suffered by a student. As we stated in *Cruz Costales* v. *Commonwealth*, 89 P.R.R. 102, 109 (1963) : "As is to be expected, the case law on this matter is abundant, since generally children are impulsive and not too cautious, and it is natural that in groups of hundreds and thousands of students who attend schools there should occur unfortunate accidents, some of which may be anticipated and avoided by the teachers; but others are, unfortunately, impossible to be anticipated and avoided."

■ As to the liability of the minor tort-feasor's parents, the transcript of evidence not having been sent to this Court, we are not in a position either to determine if the conclusion of the trial court to the effect that "in this case it has not been shown that the acts or conduct of the child are due to the parents' noncompliance with their duty of vigilance, reprimand, discipline, and education," is not supported by the evidence.

The judgment will be affirmed.

Mr. Justice Torres Rigual did not participate herein.

Mr. Justice Rigau dissented in a separate opinion.

—O—

MR. JUSTICE RIGAU, dissenting.

San Juan, Puerto Rico, March 15, 1971

This case, decided by a per curiam opinion of the Court, deals with a claim for damages sustained by a 10-year-old girl in a public school.

There is no controversy as to the findings of fact set forth by the trial court in its opinion and the parties submitted the case on the basis of such findings. What we had to decide in this case is whether or not, in view of those facts, it was proper to grant compensation and, if affirmatively decided, the amount thereof.

The prejudiced girl was a student in a public school in Río Piedras. The events occurred on February 10, 1969. Insofar as pertinent, the trial court concluded the following:

"On the aforementioned date, said minor finished her classes at 11:00 a.m. to start again at 12:00 o'clock. After eating lunch, the said minor remained on the school grounds and at about 11:30 a.m., together with other friends, went to the second floor of the school building to go to the water closets.

"She entered the said water closets and entered one of its cubicles, but she did not fasten the door bolt or lock because it was broken. Immediately after entering the cubicle, the minor student Luis A. Rivera entered the girl's bathroom and tried to open the cubicle where some of plaintiff's companions were, and upon failing to accomplish his purpose, he tried to open the door of the cubicle where the minor plaintiff had entered. The intention of said student, according to the minor plaintiff's testimony, was to try to kiss the girls.

"The minor Rivera started to try to open the door of the cubicle by pulling it outwards and the minor claimant prevented it by pulling inwards. Plaintiff did this by grasping with both hands the door of the cubicle by the edge of the latter (about 14

inches from the floor), her left hand being on the side where the door rotates on its hinges.

"Suddenly the door closed, trapping the minor plaintiff's left-hand index finger and producing an injury which caused the loss of part of the distal phalanx of the finger, which caused great sufferings to her and to her parents."

Notwithstanding the foregoing, the trial court dismissed the complaint and the majority opinion of this Court affirms said decision.

I regret that I have to dissent from the opinion of the Court. The prejudiced girl, as a student of that school, was entitled to use that bathroom. The school should provide her a minimum degree of protection. That minimum degree of protection was to have there a door bolt or lock in good working condition. If there had been one, the struggle which produced the injury to the girl would not have occurred. Proof thereof is that the girls who were in the other cubicles, which the boy tried to open and could not because their doors were well secured, did not receive any injury.

In order to see the iniquity of the unsatisfactory situation which the majority opinion considers correct, it is proper to consider the following questions. What parent would accept that when his little 10-year-old girl goes to the water closets of the school a male would come to open the door, say to kiss her, or whatever it may be? The scene, present in this case, of this 10-year-old girl clutching with her little hands the door of the water closets, struggling to prevent the door from being opened, while outside there is a male who wants to open it to enter the cubicle by force, is it not pathetic? Is it to be expected, perhaps, that she willingly open the door and invite him to enter? I do not believe that sexual freedom starts with 10-year-old girls.

The cubicles of the water closets in the schools and elsewhere must have, and generally they do have, door bolts or locks of some kind. What is anomalous is that they do not

have them. It is so evident that cases of lack of discipline like the one at bar may be foreseen, that the other cubicles in that bathroom had door bolts or cross-bars. In other words, the door bolts or locks on those doors obviously are not installed for mere decoration, but rather in order that the doors be locked and thus prevent situations like those in this case and other analogous ones.

It is the duty of the persons who operate schools to see that the cubicles of the girls' water closets can be locked with door bolts or with any appropriate lock for the protection of said girls. I believe that said proposition is evident. School warehouses are locked, classrooms and offices are locked. Do not the morale, the physical integrity, and the security of the girls of tender age who attend the educational institutions deserve the same or greater care?

What kind of values are we going to support in our decisions? Just a few days ago in *Piovanetti Doumont* v. *Martínez, ante,* p. 644, a case dealing with recovery of money, we said, very wisely, in my opinion, that ". . . the function of the judge is, properly and above all, to do justice and this justice can only be attained by vivifying the legal prescription with equity. . . ."

Are we going to vivify the law to protect the economic interest in a property and in some dollars, but are we going to refuse to do it to protect the physical integrity of a 10-year-old school girl whose parents trustingly send to school? In the case at bar in order to impart justice we do not even have to resort to equity to vivify the provision of the law. Acknowledging its moral duty, which is equity in these cases, the Government of Puerto Rico anticipated this Court and by express legislation authorized complaints against the State in cases of damages. Act No. 104 of June 29, 1955; 32 L.P.R.A. § 3077.

In *Cruz Costales* v. *Commonwealth,* 89 P.R.R. 102 (1963), case cited by the trial court and by this Court, we acknowl-

edged that "The multitude of cases and the infinite possible circumstances have produced and will produce dissimilar case law." As a caveat which we believed suitable, we stated there that in the most recent cases the courts have required a greater degree of care on the part of the schools towards the children of tender age than the one previously required.

In order that our opinion in the *Cruz Costales* case would not be taken as a check in blank, we stated there at p. 112:

"It is necessary to take into consideration the generic and the individual elements of each case. . . . [E]very case is individual and has something that cannot be applied to the others, making it necessary to bear in mind its individual circumstances and elements. 'Where the typical prevails over the individual . . . there is no other possible nor more secure means of being fair, and also equitable, than to put in practice the equitable criterion provided in the legal system. However, if even within a typical series of cases the individual surpasses the generic, then the same justice requires the practice of equity, that is, the nonapplication of the logical, generic and abstract scheme of the norm, but rather a measure commensurate with those individual elements, for otherwise it would fail equity and to fail equity would be to fail justice, since the dissimilar would be treated equally and the dissimilar must be treated unequally.'" (Citations omitted.)

A defective service is rendered to the Department of Education and to thousands of children who attend the public schools, in rendering a decision like the one this Court has rendered in this case, which is nothing else but acquiescing in a situation which is not correct and which can only, if forgiven, propitiate the negligence and indolence in the maintenance of public schools. I know the Department of Education does not desire that. Let us offer our help avoiding the unjustified complacency. It is neither too costly nor too difficult to maintain in good working condition the door bolts of the water-closet doors of the boys and of the girls. I think that is the least that could be demanded.

I would decide this case sustaining the complaint and granting an appropriate compensation.